**HERITAGE BANK & TRUST COMPANY, Plaintiff,**

v.

**James ABDNOR, Administrator, U.S. Small Business Administration, Lewis F. Matuszewich, and Lewis F. Matuszewich, P.C., Defendants.**

No. 87 C 2203.

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1989.

CONLON, District Judge.

Plaintiff Heritage Bank & Trust Company ("Heritage") sues the United States Small Business Administration ("SBA") and SBA Administrator James Abdnor for alleged breach of a loan guaranty. Heritage sues its former attorneys, Lewis F. Matuszewich and Lewis F. Matuszewich, P.C. (collectively, "Matuszewich"), for alleged breach of a duty to properly advise Heritage in connection with the SBA guar-

anty application. Jurisdiction is based on 15 U.S.C. § 634(b)(1) and on principles of pendent jurisdiction. All parties move for summary judgment.

## FACTS

On October 6, 1980, Heritage and the SBA entered into a loan guaranty agreement ("the guaranty agreement"). Amended Complaint ¶ 5. Under the agreement, the SBA agreed to guarantee certain loans made by Heritage that had been approved in advance by the SBA. *Id.* The guaranty agreement provided that loan applications had to comply with the SBA's rules and regulations. SBA Facts ¶ 2. Part 120 of Title 13, Code of Federal Regulations (13 C.F.R. § 120.5 (1982)), provides that the SBA will not guarantee loans made for the purpose of financing the purchase of assets from the lender or an associate of the lender.[1] *Id.* at ¶ 3.

On October 4, 1982, Heritage applied to the SBA for a 90 percent guaranty of a loan to Kautzmann Steel Company, Inc. ("Kautzmann"). *Id.* at ¶ 5. The principal amount of the loan was $550,000. *Id.* The loan proceeds were to be used by Kautzmann to acquire the assets of the Beverly Steel Corporation ("Beverly Steel"). *Id.* The president and controlling shareholder of Beverly Steel, William Parker ("Parker"), was also a member of Heritage's board of directors. *Id.* at ¶ 6. Under the terms of the purchase agreement, Parker would continue to own Beverly Steel's premises and, in addition, issue a note in the amount of $300,000 as part of Kautzmann's financing package. Heritage Facts ¶ 22; SBA Facts ¶ 15.

Parker's continuing interest in Beverly Steel and his role as a Heritage board member caused Heritage to question whether its loan application complied with SBA regulations. SBA Facts ¶ 6. At issue was whether Heritage should disclose Parker's role as a Heritage board member.

*Id.* Matuszewich concluded that Parker's role as a board member did not jeopardize Heritage's application. Heritage Mem.Ex. 4 at 122–28. Therefore, Heritage did not inform the SBA that Parker was a member of its board.[2] SBA Facts ¶ 20.

The SBA initially denied Heritage's loan application because inadequate cash flow from Beverly Steel's operations created a risk that Kautzmann would default on the loan. Heritage Facts ¶¶ 19, 20. However, the SBA agreed to reconsider the application if Heritage and Kautzmann reduced the size of the loan, increased Kautzmann's equity in the acquisition and agreed to other changes in the acquisition financing. *Id.* at ¶ 21.

Kautzmann and Heritage agreed to meet the SBA's demands. *Id.* at ¶ 22. The acquisition price was reduced from $850,000 to $750,000; Kautzmann's note payable to Parker was reduced from $300,000 to $250,000; the loan and requested SBA guarantee was reduced from $550,000 to $500,000; and Kautzmann agreed "to inject $50,000 of equity into the Company." *Id.*

On January 25, 1983, the SBA approved Heritage's revised application, and agreed to guarantee 90 percent of the Kautzmann loan. *Id.* at ¶ 24. On March 5, 1985, however, Kautzmann defaulted on the loan and filed a voluntary petition for bankruptcy. Amended Complaint ¶ 7. Heritage notified the SBA of Kautzman's default and requested that it repurchase 90 percent of the loan pursuant to the guaranty agreement. *Id.* at ¶ 8. The SBA refused. The SBA claimed that the guaranty agreement was void because Heritage had not complied with SBA regulations requiring Heritage to disclose Parker's identity as a board member.

Heritage responded by commencing this action. Count I of the amended complaint alleges that the SBA breached the guaranty agreement causing damages of $300,679.

---

**1.** The term "associate" includes a member of the lender's board of directors, or any company in which a director of the lender has a ten percent ownership interest. 13 C.F.R. § 120.1(d)(1) and (3) (1982).

**2.** Heritage's application did disclose Parker's position as controlling shareholder and president of Beverly Steel, as well as his participation in Kautzmann's financing package. Heritage Mem.Ex. 1.

Amended Complaint ¶ 11. Count II alleges that Matuszewich breached its duty of care to Heritage by negligently misrepresenting the effect of Parker's status as a director on the validity of Heritage's loan application. *Id.* at ¶ 21. Matuszewich moves for summary judgment against Heritage on the legal malpractice claim. Heritage and the SBA each move for summary judgment on the breach of contract claim.

## DISCUSSION

Under Fed.R.Civ.P. 56, a motion for summary judgment will be granted only if there are no material facts in dispute and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1985); *Silverman v. Ballantine,* 694 F.2d 1091, 1093 (7th Cir. 1982). A party responding to a motion for summary judgment must set forth specific facts supporting the existence of a genuine issue for trial. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983). All reasonable factual inferences must be viewed in favor of the non-movant. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984); *Korf v. Ball State Univ.,* 726 F.2d 1222, 1226 (7th Cir.1984). However, a bare contention that an issue of fact exists is insufficient to create a factual dispute. *Posey,* 702 F.2d at 105.

The issue in Heritage's breach of contract claim is whether Heritage failed to meet a condition precedent when it opted not to disclose Parker's board membership in its SBA application.[3] The SBA claims that Heritage was required to disclose this information under SBA regulations applicable to the guaranty agreement. SBA Facts ¶¶ 1–3; SBA Mem. at 8. Heritage claims that failure to disclose this information was not a material breach of the guaranty agreement because Heritage substantially complied with the remaining application procedures. Heritage Mem. at 3. Heritage further contends that the SBA had constructive notice of Parker's board membership because a copy of Heritage's annual report containing this information was on file with the SBA. Heritage Facts ¶ 11; Heritage Reply Mem. at 2. Finally, Heritage claims that SBA regulations did not require disclosure of Parker's identity as a board member because Parker was not a party to the Kautzmann loan. Heritage Mem. at 9–10.

■ Heritage's argument that it was not required to disclose Parker's board membership is without merit. SBA regulations provide that the SBA will not guarantee a loan if the proceeds are used to finance the purchase of property from a bank director, unless the lender first discloses the director's identity on its SBA application. 13 C.F.R. § 120.5(a) (1982); *Eastern Illinois Trust & Savings Bank v. Sanders,* 826 F.2d 615, 616 (7th Cir.1987); *First Nat'l Bank of Louisa, KY v. United States,* 6 Cl.Ct. 241, 243 (1984). Here, the loan proceeds were used to finance Kautzmann's acquisition of Beverly Steel's assets. Heritage does not deny that Parker controlled Beverly Steel and was indirectly if not directly a party to the sale. This means that the loan proceeds were used to finance the purchase of property from a Heritage board member. Under SBA regulations, Heritage was required to inform the SBA on its application that Parker was a member of its board. *Id.*

■ Heritage cannot evade this requirement by arguing that its annual report gave the SBA constructive notice of its board of directors. Annual reports are maintained in the SBA's lender files. Heritage Facts ¶¶ 9–10. However, SBA loan officers do not regard this information as relevant to their analysis. Heritage Facts, Ex. 5 at 56. Moreover, Heritage was not required to enclose a copy of its annual report with the guaranty application. *Id.* at Ex. 1. Because the SBA's regulations have the force and effect of law, Heritage is charged with knowledge of these regulations and had a duty to comply with them. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10

---

**3.** Another way of framing this issue is whether Heritage's failure to comply with applicable SBA regulations is an affirmative defense to the SBA's refusal to guarantee the Kautzmann loan.

(1947). As an experienced lender with prior participation in the SBA loan program, Heritage cannot evade its statutory obligation by shifting the burden of disclosure to the SBA. *Federal Crop Ins. Corp.*, 332 U.S. at 382–85, 68 S.Ct. at 2–3; *Eastern Illinois Trust & Savings Bank*, 826 F.2d at 618; *First Nat'l Bank of Louisa*, 6 Cl.Ct. at 244–45.

█ The remaining issue is whether failure to disclose Parker's board membership amounts to a material breach of Heritage's duties under the guaranty agreement.[4] Four issues affect materiality: (1) whether the breach operated to defeat the bargained-for objectives of the parties; (2) whether the breach caused disproportionate prejudice to the non-breaching party; (3) whether under custom and usage the breach is considered material; and (4) whether the allowance of reciprocal nonperformance will result in the accrual of an unreasonable and unfair advantage. *Eastern Illinois Trust & Savings Bank*, 826 F.2d at 617. Because one of the parties to this agreement was a federal agency, the court must also consider whether the breach significantly undermined the regulatory objectives of the SBA program. *Id.*

█ Failure to disclose a director's participation in a transaction financed by the lender violates SBA regulations and constitutes a material breach of the guaranty agreement. *Eastern Illinois Trust & Savings Bank*, 826 F.2d at 618; *First Nat'l Bank of Louisa*, 6 Cl.Ct. at 243–45. The guaranty agreement required Heritage to comply with all applicable SBA regulations. SBA Facts ¶ 2. Without prior disclosure, the regulations provided that the SBA would not guarantee loans where the proceeds were used to finance the purchase of property from a bank director. 13 C.F.R. § 120.5(a) (1982); *Eastern Illinois Trust & Savings Bank*, 826 F.2d at 616; *First Nat'l Bank of Louisa*, 6 Cl.Ct. at 243. Disclosure of Parker's identity as a Heritage board member thus was an express

condition precedent to SBA liability. *Id.* Heritage's failure to disclose Parker's conflict of interest constituted a breach of trust that undermined the integrity of the application process and threatened the regulatory objectives of the SBA program. *Eastern Illinois Trust & Savings Bank*, 826 F.2d at 618; *First Nat'l Bank of Louisa*, 6 Cl.Ct. at 243–45. Therefore, the SBA was not required to purchase 90 percent of the Kautzmann loan. *Id.*

There being no material issues of fact in dispute, the SBA is entitled to judgment on Count I as a matter of law. *Id.* This court declines to exercise its jurisdiction over Heritage's pendent state claims in Count II. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966).

## CONCLUSION

The SBA's motion for summary judgment on Count I is granted. Heritage's motion for summary judgment on Count I is denied. Count II is dismissed without prejudice.

---

4. The construction of a contract between a federal agency and a private party is governed by principles of general federal law. *United States v. Kimball Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Clear-* *field Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *Eastern Illinois Trust & Savings Bank,* 826 F.2d at 616.