DAVIS, Circuit Judge.
The Smithsons, who had made loan and security agreements with the Farmers Home Administration (FmHA) (an agency of the U.S. Department of Agriculture), brought suit in the United States Claims Court for alleged breach of those agreements. The Government moved for summary judgment primarily on the ground that the undisputed and indisputable facts showed that no such breach had occurred. The Claims Court (Nettesheim, J.) granted the Government’s motion and dismissed the complaint (reported as Nutt v. United States, 12 Cl.Ct. 345 (1987)). The Smith-sons appeal. We affirm.
I.
In Dahl v. United States, 695 F.2d 1373, 1378-79 (Fed.Cir.1982), we described the circumstances and procedure in which FmHA makes low-interest loans to farmers who are unable to obtain credit from commercial sources. In its opinion in the cur *793 rent case, the Claims Court summarized this process as follows (12 Cl.Ct. at 347):
The FmHA grants farm operating loans to eligible borrowers who are unable to obtain reasonable financing elsewhere. 7 C.F.R. § 1941 (1983). The FmHA also makes “emergency loans” and various debt servicing options available to farmers, while administering the various loans, grants, and assistance programs under regulations promulgated by the Secretary of the Department of Agriculture.
Loans are made to an eligible borrower only after the FmHA determines that the borrower’s plan of operation has a reasonable chance of success. 7 U.S.C. § 1941(a)(2) (Supp.1985); 7 C.F.R. §' 1941.12(a)(3) (1983). The FmHA’s loan application evaluation process begins when a County Committee (the “Committee”), made up of three local farmers, determines whether a borrower is eligible for a loan. 7 C.F.R. § 1910.4(b). With assistance and recommendations from the County Supervisor, the Committee considers all relevant circumstances about the borrower’s farming operation, including the borrower’s farming record, proposal for use of the loan proceeds, and statement of the borrower’s current financial condition—all as reflected in the Farm and Home Plan (the “FHP”) submitted by the borrower. 7 C.F.R. §§ 1910.5, 1941.12. If the Committee finds the borrower to be eligible, it then certifies this result to the County Supervisor, 7 C.F.R. §§ 1941.30, 1945.180.
The County Supervisor has the actual authority to approve a loan. 7 C.F.R. § 1901.2. Once a favorable certification is made by the Committee, the County Supervisor determines whether the plan of operation is feasible and whether the loan is to be used for authorized purposes and can be repaid. 7 C.F.R. § 1941.33(b). After approving a loan, the County Supervisor forwards the loan request to the FmHA state office to issue and forward the loan proceeds. 7 C.F.R. § 1941.33(3).
Appellants Smithson received 15 FmHA loans (farm ownership and emergency) between 1972 and 1983. They executed several loan agreements and five security agreements. The specific circumstances underlying the current suit relate to the Smithsons’ further application for FmHA loans and services on January 10, 1984. They then worked with County Supervisor Wolf to devise a FHP (Farm and Home Plan). Early in February 1984, Wolf submitted the Smithson’s application to the State Office along with the FHP. (Appellants assert that the FHP was improperly based on figures other than those they had supplied to Wolf.) On February 15, 1984, the State Office responded, setting preconditions to the Smithson’s continued consideration for loan services. On March 8, 1984, Wolf forwarded to the State Office a March 1, 1984 County Committee certification of eligibility, along with a February 23, 1984 revision of the FHP, which included a loan request for $265,000. By notice dated April 6, 1984, the State Office informed Wolf that the Smithsons' loan was approved. By April 1, 1984 appellants had already surrendered 1,977 acres that they had leased and which they had indicated in the FHP they would farm in 1984. On April 27, 1984, the Smithsons told the FmHA that they intended to decline the loan. In its place, they requested (on May 11, 1984) loan servicing relief such as consolidation, rescheduling, reamortization or deferral. FmHA denied that request (on June 8, 1984). Appellants attempted to appeal the decision within FmHA, but were told that decisions denying loan servicing relief were not appealable.
In their Claims Court suit, the Smithsons argued that, in its 1984 actions, (a) FmHA’s regulations were incorporated into their agreements with that agency, (b) FmHA violated several of those incorporated regulations and thus breached the agreement, and (c) FmHA’s delay (asserted to be undue) in processing and approving their 1984 loan application caused them to suffer enormous losses, for which they should be reimbursed. The Claims Court rejected these contentions. On appeal, these arguments are renewed.
*794 II.
Two threshold points need to be made on this appeal. First, though the appellants repeat that FmHA engaged in arbitrary, capricious, culpable and bad faith conduct toward appellants, the Claims Court made no such findings and did not even determine that the Smithsons had raised a genuine issue as to those characterizations (aside from the allegation that the agency had breached its own binding regulations); we must therefore assume that, apart from the asserted violation of the regulations and the general allegation of undue delay, there is no evidence before us of such active misconduct. We cannot assume its existence, as appellants do.
Second, because the Smithsons sued for breach of their contracts with FmHA, the Claims Court had initial jurisdiction over the case under 28 U.S.C. § 1491 (the Tucker Act which covers contracts made with the Government). This is not to say that there was jurisdiction over every aspect of the case or every contention advanced by appellants; jurisdiction over the individual points has to be judged separately.
III.
Were the FmHA regulations incorporated into the appellants’ contract with the agency so that the Government’s alleged breach of those regulations constituted a breach of contract?[1]
The contractual clause that is said to embody this incorporation is the provision of the security agreements that:
This agreement is subject to the present regulations of the secured party [FmHA] and to its future regulations not inconsistent with the express provisions hereof.
This is hardly the type of clause that should be read as incorporating fully into the contract all the FmHA regulations. First, if that were the parties’ purpose, they would have explicitly so provided. Instead, on its face the quoted provision simply says that the contract is “subject” to present and future (consistent) regulations; that appears to say no more than that any other contract provision that is contrary to a regulation would be invalid—not that, even though there is no inconsistency, all agency regulations are wholly taken into the contractual obligation. Secondly, the clause must refer, not to specific regulations or particular matters, but to the entire corpus of FmHA regulations without exception. Yet it is very highly doubtful that the agency wished to make such a wholesale incorporation of a mass of regulations many of which would probably have nothing specific to do with FmHA’s transactions with the Smithsons and some of which are merely hortatory (e.g., “Be sympathetic; try to help the applicant work out the problems").[2] The farmer could then choose among a multitude of regulations as to which he could claim a contract breach— and thus “[a] wholly new ground of obligation would be summarily created by mere implication” (Eastport Steamship, 372 F.2d 1002, 1010 (Ct.Cl.1967)) from a general and ambiguous contract provision in a situation where “only the plainest language could warrant a court in taking [liability] to be imposed.” Pine Hill Co. v. United States, 259 U.S. 191, 196, 42 S.Ct. 482, 483, 66 L.Ed. 894 (1922). Third, the more natural reading of appellants’ complaint is that its incorporation argument states, not a true contractual claim, but a tort claim against the Government for misfeasance and misconduct; that claim is, of course, outside the Claims Court’s jurisdiction. See 28 U.S.C. § 1491(a)(1) (Claims Court has jurisdiction “in cases not sounding in tort”); Somali Dev. Bank v. United States, 508 F.2d 817, 820-23 (Ct.Cl.1974); McCormick v. United States, 227 Ct.Cl. 661, 665 (1981).[3]
*795 We must, therefore, reject appellants’ contention that the agency’s regulations formed an integral part of the Smithsons’ contract with FmHA and that violation of any of those regulations can serve as a proper basis for the complainants’ claims of breach of contract.
IV.
Aside from their point that the FmHA regulations were bodily incorporated into these contracts (which we have rejected in Part III, supra), the Smithsons rest their claim that the FmHA breached its contract by delaying in 1984 to tender the requested loan funds and other FmHA services on the provision of the security agreements that “Secured party [FmHA] will make or insure future loans or advances to debtor to enable him to raise or harvest farm crops or raise livestock or other animals, provided funds are available and the debtor meets all then current requirements imposed by regulations of the secured party.”
To the invocation of this clause the Claims Court responded that (a) FmHA approved the 1984 loan sought by the Smithsons [i.e., “the future loans or advances to the debtor”] who declined it; (b) the clause does not set any time limits or schedules for making the loans or advances; (c) the contract provision — “future loans or advances” — does not cover the other FmHA services sought by appellants in May 1984 (i.e., loan consolidation, rescheduling, reamortization, and deferral; release of security on existing loans) and accordingly there was no breach of the contract clause; and (d) any undue delay by FmHA in making the loan, or failure to provide alternative loans or loan servicing relief, is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction. We agree with these dispositions and add only that, on the record before us, the 83 days the agency took to approve the 1984 loan does not seem unduly delayed or an abuse of discretion under the loan and security agreements.[4]
V.
It follows that the judgment of the Claims Court dismissing the appellants’ complaint must be affirmed.
AFFIRMED.

. Appellants do not contend that the regulations, in and of themselves, mandate the payment of money. See, e.g., Eastport Steamship Corp. v. United States, 372 F.2d 1002, 1007 (Ct.Cl.1967).

. In 1984, FmHA’s regulations, published in C.F.R., cover more than 1200 pages. 7 C.F.R. §§ 1900-2045 (1984).

. The Smithsons rely on Dahl v. United States, 695 F.2d 1373 (Fed.Cir.1982), for the proposition that the FmHA regulations have been made *795 contractual terms. The Dahl opinion did refer generally to the contractual arrangement as including “the controlling regulations” (id. at 1376), but that general observation had nothing to do with the result of that case and must be regarded as a slight and unnecessary dictum. McCormick v. United States, 227 Ct.Cl. 661 (1981), is likewise not helpful on the point of contractual incorporation of FmHA regulations.

. We have already put aside (in Part II, supra) appellants' unsupported assertions of bad faith and misconduct.