996 F.2d 1237
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Liza FLOYD and Mike I. Floyd, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5024.
 United States Court of Appeals, Federal Circuit.
 May 26, 1993.
 
 Before NIES, Chief Judge, and NEWMAN and PLAGER, Circuit Judges.
 PLAGER, Circuit Judge.
 
 
 1
 Liza and Mike Floyd sued defendant United States (the "government") for breach of contract, alleging that the Farmers Home Administration (FmHA) failed to meet its obligation under a 1982 security agreement to make continuing loans to the Floyds. The Floyds appeal the Court of Federal Claims decision granting summary judgment to the government, Floyd v. United States, No. 90-651C (Ct.Fed.Cl. Sept. 22, 1992) (originally issued as an unpublished order on Sept. 1, 1992). We affirm.
 
 
 2
 Marvin Floyd was a farmer in Tillman, SC, until his death in 1987. His widow Liza and son Mike succeed him. Between 1962 and 1983, Floyd received eleven FmHA loans totaling approximately $370,119. Floyd mortgaged his farm to FmHA as security for his loans. On September 29, 1982, Floyd and FmHA entered into a Security Agreement which contained the following clause, p IV(J):
 
 
 3
 Secured Party will make or insure future loans or advances to Debtor to enable Debtor to raise or harvest farm crops or raise livestock or other animals, provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party.
 
 
 4
 Floyd had also received a $65,000 disaster loan from the Small Business Administration (SBA) in 1977, for which Floyd gave SBA a second lien on the farm. The Floyds were late with the 1978 and 1979 payments on the SBA loan, and they never made the 1980 payment, which put them in default on the loan.
 
 
 5
 In 1984, FmHA approved two loans to Floyd: an emergency loss loan for $19,100 and an operating expense loan for $33,900. Both loans were conditioned on obtaining non-disturbance agreements from two of Floyd's creditors, including SBA. Under FmHA regulations, when a borrower is subject to the liens of another creditor, the FmHA may require a non-disturbance agreement before disbursing loans. See 7 C.F.R. § 1945.169(k) (1984). The agreement provided that the creditors would not foreclose until January 1, 1985, after the harvest season. SBA at first refused to sign, but after some negotiations SBA agreed on July 9, 1984 to postpone any sale of the farm until December 31, 1984. At this time, FmHA cancelled the $33,900 operating loan because it was too late to plant the spring crops that were to have been collateral for the loan. Floyd received the $19,100 emergency loss loan on August 10, 1984.
 
 
 6
 On August 28, 1988 Liza Floyd filed suit against the government in the District Court of the District of South Carolina. On April 17, 1990 the suit was transferred to the Court of Federal Claims[1] for adjudication of the contract claims against FmHA. Liza Floyd's son Mike was also added as a plaintiff. The Floyds alleged breach of contract, violations of statutes and regulations, and deprivation of property without due process. On November 8, 1991 the Floyds moved for partial summary judgment on the issue of liability. The government cross-moved for dismissal due to lack of jurisdiction or for summary judgment on the merits.
 
 
 7
 On September 1, 1992 the Court of Federal Claims (CFC) granted the government's motion for summary judgment. The court found that the Floyds had no breach of contract claim because p IV(J) of the FmHA security agreement did not create a contractual obligation on behalf of the government. The court's reasoning was that the clause merely restates FmHA's pre-existing legal duty and is a recital of potential future entitlement rather than an outright promise of that entitlement. It would be contrary to the nature of the administrative process to interpret the clause to restrict FmHA's administrative discretion.
 
 
 8
 Alternatively, the CFC held that even if there were a breach of contract action, the government would be entitled to judgment as a matter of law because there was no breach. Absent the non-disturbance agreement, the Floyds did not qualify for the operating loan. By the time the SBA agreed to sign a non-disturbance agreement, thus qualifying the Floyds for the operating loan, the spring planting season had passed and the funds could no longer be applied for their intended purpose. Thus, since the FmHA acted in accordance with its responsibilities, there was no breach.
 
 
 9
 The Floyds appealed the CFC's decision.
 
 DISCUSSION
 
 10
 The Floyds argue that p IV(J) of the security agreement is an enforceable contractual obligation. They contend that, although FmHA has the general power to make loans, p IV(J) specifically requires the FmHA to make loans to a particular applicant. To assume that the provision does no more than echo the existing legal duty is to read it out of existence, according to the Floyds. The government argues that p IV(J) merely restates FmHA's pre-existing legal duty. The agency's purpose is to make loans to qualified farmers; it would be totally anomalous for FmHA to transform a discretionary duty into an obligatory undertaking enforceable by money judgment.
 
 
 11
 As noted, the trial judge ruled that p IV(J) did not constitute an enforceable contractual obligation. Other CFC decisions have held that provision p IV(J) does support a breach of contract action. See Campbell v. United States, 16 Cl.Ct. 690, 697 (Cl.Ct.1989); Nutt v. United States, 12 Cl.Ct. 345, 354 (Cl.Ct.1987) (consolidated with Smithson v. United States ), aff'd on different grounds, Smithson v. United States, 847 F.2d 791 (Fed.Cir.1988). In Campbell, the court stated that because the security agreement "places an obligation upon the FmHA to entertain loan requests by plaintiffs ... this clause provides an adequate basis for plaintiffs to formulate a contractual claim." 16 Cl.Ct. at 697. In that case, however, the contract claim was barred by the statute of limitations.
 
 
 12
 In Nutt/Smithson, the CFC held that p IV(J) can be construed as an express promise by FmHA that would support a breach of contract claim. In that case Nutt's claim survived the government's motion for summary judgment and went to trial. Summary judgment was granted on Smithson's claim because there was no breach; FmHA approved and offered the loan to Smithson, thus fulfilling its obligation, but Smithson declined the loan.
 
 
 13
 In the case before us, the CFC based its decision on two independent grounds. First, there was no breach of contract action; and second, there was no breach. On the facts of this case, we conclude that even assuming that p IV(J) confers a contractual right, there was no breach. Since the CFC's decision is correct on its second basis, we need not decide the first issue of whether p IV(J) supports a breach of contract action.
 
 
 14
 There can be no breach regarding the $19,100 emergency loss loan, because those funds were made available to the Floyds. There was no breach regarding the $33,900 operating loan. Under FmHA regulations, which permit loans to be conditioned upon obtaining non-disturbance agreements from creditors, the Floyds did not qualify for that loan until July. Any suit regarding the delay in SBA's execution of the non-disturbance agreement would constitute a tort action over which the CFC lacks subject matter jurisdiction. See Smithson, 847 F.2d at 795. By the time the SBA signed the non-disturbance agreement in July, it was too late to plant the crops intended to serve as collateral for the operating loan. FmHA was within its authority to deny making a loan that was not supported by adequate collateral.
 
 
 15
 Since it is undisputed that the emergency loss loan was disbursed, and the Floyds raised no genuine material factual issue regarding their non-qualification for the operating loan, summary judgment was properly granted to the government. See Fed.R.Civ.P. 56; Telectronics Pacing Systems, Inc. v. Ventritex, Inc., 982 F.2d 1520, 1522, 25 USPQ2d 1196, 1197-98 (Fed.Cir.1992). We therefore affirm the Court of Federal Claims.
 
 
 
 [1]
 The United States Claims Court was renamed the Court of Federal Claims on October 29, 1992. See Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 902(a), 106 Stat. 4506, 4516 (1992)