**Joan BLOCKER d/b/a Small World Christian Childcare Center, Plaintiff,**

v.

**SMALL BUSINESS ADMINISTRATION and Dayton Watkins, in her capacity as Administrator of the Small Business Administration, Defendants.**

**Civ. Action No. 95–1954 (CRR).**

United States District Court, District of Columbia.

March 1, 1996.

Colby Mims May, of the American Center for Law & Justice, Washington, DC, and Larry Crain, for plaintiffs.

Andrew C. Phelan and Theodore C. Hirt, Federal Programs Branch, United States Department of Justice, Washington, DC, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, United States Attorney for the District of Columbia, and Eric S. Benderson and Deborah K. Gunn, Office of the General Counsel, United States Small Business Administration, were on the briefs, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-captioned case are the parties cross Motions for Summary Judgment, and replies and oppositions thereto. Upon careful consideration of the parties' pleadings, the entire record herein, and the law applicable thereto, the Court shall grant the defendants' Motion for Summary Judgment.

## BACKGROUND [1]

The plaintiff, Joan Blocker, owns and operates a for-profit day care center that provides a sectarian curriculum. On or about March 15, 1995, she submitted a loan application to the Glenville Bank & Trust Company (the "Bank") in order to refinance existing loans and to refurbish the day care center. Because she had insufficient collateral to guaranty the loan, the Bank submitted to the Small Business Administration ("SBA") a Lender's Application for Guaranty seeking an SBA guaranty for the plaintiff's loan under the SBA's pilot Low Documentation Loan Program, pursuant to which the SBA provides loan guarantees to certain businesses which would not otherwise qualify for financing, provided that they meet specific criteria.

Notwithstanding that the Bank characterized her as a "good risk" and a qualified candidate for an SBA backed guaranty, the SBA denied the plaintiff's application. On the basis of the plaintiff's loan application materials and a description therein of the day care's curriculum as "Christian-based," the SBA determined the child care center was an "Organization[ ] promoting religious objectives." Under 13 C.F.R. § 120.101–2(a), such organizations are ineligible to receive government assistance.

However, two days after the SBA denied the plaintiff's guaranty application, the Bank reevaluated its position and, noting the child care center would go bankrupt without the loan, approved the plaintiff's loan application without the SBA guaranty. The plaintiff therefore received essentially the same loan that she applied for pursuant to the Low Documentation Program. The plaintiff alleges, however, that the delay in processing her loan guaranty application and its ultimate denial caused her to incur overdraft charges.

The plaintiff claims that the denial of the guaranty violated her rights under the Free Speech, Free Exercise and Establishment Clauses of the First Amendment, the Due Process Clause and Equal Protection guarantee of the Fifth Amendment, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1, and the Administrative Procedures Act. As relief therefor, the plaintiff seeks an injunction and a declaratory judgment that 13 C.F.R. § 120.101–2(a) is unconstitutional.

The SBA argues that, because the plaintiff ultimately received the loan for which the SBA guaranty was to act as security, the plaintiff was not injured and thus lacks standing to challenge the regulation. In a related argument, the defendants maintain that the plaintiff's overdraft charges are not fairly traceable to the denial of the guaranty and therefore cannot be grounds for standing to bring suit. The SBA argues in the alternative that the plaintiff's claims are moot because she received the same loan that the SBA would have guaranteed.

## DISCUSSION

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450 (1976). "The 'case or controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The doctrines of standing, mootness, ripeness and political question "that have grown up to elaborate that requirement are founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). These are threshold inquiries that "must be answered by reference to the ... Art[icle] III notion that federal courts may exercise power only in the last resort and as a necessity." *Id.*, 468 U.S. at 751, 104 S.Ct. at 3325 (quoting *Chicago & Grand Trunk R. Co. v.*

---

1. Except as otherwise noted, all facts are drawn from the parties' Joint Statement of Material Facts Not In Dispute, submitted in accordance with Rule 108(h) of the Rules of the United States District Court for the District of Columbia.

*Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892)).

As grounds for her standing to bring suit, the plaintiff alleges that she incurred overdraft charges and thus incurred financial loss as a result of the SBA's delay and ultimate denial of the loan guaranty. The Court concludes that this simply does not present a case or controversy within the meaning of Article III. Even assuming that the plaintiff in the case at bar had some legal right to the loan guaranty, the Article III courts are directed in the first regard to determine whether a justiciable controversy exists. Pursuant to that doctrine, the defendants assert that the plaintiff's claims are subject to dismissal or summary judgment on the grounds that her claims are moot and that she lacks standing to sue. Because the Court concludes that the plaintiff's claims no longer present a live controversy and the plaintiff's injury is not fairly traceable to the action of the defendants the Court shall grant the defendants' Motion for Summary Judgment.

## I. BECAUSE THE PLAINTIFF RECEIVED A LOAN ABSENT THE GUARANTY HER CLAIMS ARE MOOT.

▆ The mootness doctrine constitutes part of the "case or controversy" limitation on a federal court's jurisdiction. In general, a case is moot "when the issues presented are no longer 'live' or the parties lack a cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). A case may become moot in one of two ways. First, the wrongful conduct may pass without the possibility of repetition.

*United States v. Alaska S.S. Co.,* 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920). Second, the circumstances may be such that a judgment would no longer affect the rights of the party. *Atherton Mills v. Johnston,* 259 U.S. 13, 42 S.Ct. 422, 66 L.Ed. 814 (1922).

▆ The plaintiff's claim that the SBA's denial of the loan guaranty deprived her of rights guaranteed by the First and Fifth Amendments, the Religious Freedom Restoration Act, and the Administrative Procedures Act is moot. Two cases are apposite. In *Sosna v. Iowa,* 419 U.S. 393, 400, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975), the plaintiff challenged the constitutionality of Iowa's statutory requirement that a petitioner in a divorce action must be a resident of the state for at least one year preceding the petition. The plaintiff brought a class action seeking a declaratory judgment that the statute was unconstitutional. Although the plaintiff was permitted to proceed with the action because her claims were asserted as part of a class action,[2] the Supreme Court observed that if the "appellant had sued only on her own behalf ... the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal." *Id.* at 399, 95 S.Ct. at 557.

Similarly, in *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), a prisoner brought an action challenging certain procedural rights regarding his eligibility for parole. The Supreme Court held that once the petitioner obtained a complete release, "from that day forward it is plain that respondent can have no interest whatsoever in the procedures followed by petitioners in granting parole." *Id.* at 148, 96 S.Ct. at 348.

*Sosna* and *Weinstein* stand for the proposition that courts should not intervene in matters where the original controversy that

---

**2.** The plaintiff in the instant case does not allege that her claim comes within one of the exceptions to the mootness doctrine. She does not assert her claims as part of a class action, nor does she claim that her claims are capable of repetition yet evading review. Although it is conceivable that the plaintiff could again apply for an SBA loan guaranty, the plaintiff does not allege that she will do so. This is a critical deficiency as the test requires more "than a 'theoretical possibility' that the challenged action

would reoccur. Rather, there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Amato v. Wilentz,* 753 F.Supp. 543, 551 (D.N.J.1990) (citing *Weinstein,* 423 U.S. at 149, 96 S.Ct. at 348). The plaintiff does not allege that she will be subject to the complained of government action again and it is merely speculative that the plaintiff would again apply for an SBA loan guaranty.

gave rise to the litigation is dead. In *Sosna,* once the marriage at issue there was dissolved there remained no case or controversy regarding the dissolution of that same marriage and the claim was "essentially" moot. In *Weinstein,* once the respondent received unconditional release from prison, the actions of the parole board regarding its release procedures no longer affected any of the plaintiff's rights or direct interests. *Weinstein,* 423 U.S. at 147, 96 S.Ct. at 348.

In the instant case, the plaintiff's claim is moot because she received the same loan that she originally applied for, albeit without the SBA guaranty. If the plaintiff had been awarded the SBA guaranty, the guaranty would have secured for her the same loan she currently has. Therefore, like the controverted divorce in *Sosna* and claimed liberty interest in *Weinstein,* there remains no case or controversy regarding the plaintiff's application for a loan guaranty. Once the plaintiff received what she ultimately sought—a loan—the fact that she was ineligible to receive the SBA loan guaranty became a moot issue. The function of the SBA loan guaranty program is to permit qualified businesses to receive otherwise unattainable loans. The guaranty functions, therefore, as a means to an end and not an end in itself. As the plaintiff received the same loan that the SBA guaranty would have secured for her, the plaintiff can no longer be said to have a direct interest in the procedures followed by the SBA in its granting of loan guarantees. Moreover, by virtue of her already having received a loan, the plaintiff is ineligible for the guaranty. In sum, the plaintiff's claim presents no live case or controversy. Accordingly, the Court shall grant the defendants' Motion for Summary Judgment.

## II. THE PLAINTIFF DOES NOT HAVE STANDING TO SUE BECAUSE HER OVERDRAFT CHARGES ARE NOT FAIRLY TRACEABLE TO THE ACTIONS OF THE DEFENDANTS.

■ In response to the defendants' contention that she lacks standing to challenge the denial because she received essentially the same loan for which she originally applied, the plaintiff alleges, as grounds for her standing to bring suit, that she incurred overdraft charges and thus incurred financial loss as a result of the SBA's denial of the loan guaranty. Because her financial loss is not fairly traceable to the actions of the defendants, the plaintiff lacks standing to challenge the denial of the guaranty.

■ The notion of standing, which constitutes part of the Article III case and controversy limitation on the jurisdiction of federal courts, "focuses on the party seeking to get [a] complaint before a federal court and not on the issues [the party] wishes to have adjudicated." *Flast v. Cohen,* 392 U.S. 83, 98, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968). "The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not th[e] result of the independent action of some third party not before the court. Third, it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.,* at 559, 112 S.Ct. at 2136 (citations, internal quotations and footnotes omitted).

■ The plaintiff's claim that the SBA's denial of the loan guaranty caused the plaintiff to incur overdraft charges and hence, to suffer financial injury, does not satisfy the second element of standing. For the financial injury to be attributable to the defendant, it must be "fairly traceable" to the defendant's action, not "attenuated at best," *Allen,* 468 U.S. at 757, 104 S.Ct. at 3327, and it may not depend on the "unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to control or predict." *ASARCO Inc. v. Kad-*

*ish,* 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989).

In *Simon v. Eastern Kentucky Welfare Rights Org.,* the Supreme Court

> held that standing to challenge a Government grant of a tax exemption to hospitals could not be founded on the asserted connection between the grant of tax exempt status and the hospital's policy concerning the provision of medical services to indigents. The causal connection depended on the decisions hospitals would make in response to withdrawal of tax-exempt status, ·and those decisions were sufficiently uncertain to break the chain of causation between the plaintiff's injury and the challenged Government action.

*Allen,* 468 U.S. at 759, 104 S.Ct. at 3329 (citing *Simon,* 426 U.S. at 40–46, 96 S.Ct. at 1925–28).

    █ In the instant case, the overdraft charges incurred by the plaintiff were the result of many factors and actions taken by the plaintiff herself. Thus the connection between the alleged injury and the SBA's action is too attenuated to be "fairly traceable" to the defendants. The plaintiff's failure to abide by the requirements of her existing financing or the terms of her bank account are not attributable to the SBA, which is to say that the plaintiff cannot somehow impute to the SBA her decision to cut checks for which she had insufficient funds. Additionally, the Bank's specific loan and re-payment terms necessarily affected the incurment of overdraft fees, i.e., not all lenders charge the same overdraft fees and a different lender may not even have charged the plaintiff a fee. Moreover, even if the SBA had approved the loan, overdraft charges would still have been incurred regardless of the SBA's action.[3] The overdraft charges are thus too attenuated to be imputed to the action of the

SBA and are therefore not "fairly traceable" to the SBA, but are rather, the consequence of the independent actions of the Bank and the plaintiff. In sum, the "links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondent's standing." *Allen,* 468 U.S. at 759, 104 S.Ct. at 3329.

## CONCLUSION

Upon careful consideration of the parties' pleadings, the entire record herein, and the law applicable thereto, and for the reasons stated herein, the Court shall enter and Order of even date herewith consistent with the foregoing Memorandum Opinion granting the defendants' Motion for Summary Judgment and denying the plaintiff's cross Motion for Summary Judgment.

---

**3.** In a related claim, the plaintiff alleges that the SBA unduly delayed the processing of her application. The SBA, however, cannot reasonably be said to have unduly delayed its rejection of the plaintiff's loan. The processing of the application took approximately one month and it is uncontroverted that it took this long only because *the Bank* initially failed to submit sufficient information to the SBA which thus necessitated that the application be supplemented. As the SBA was not obligated by statute or regulation to

consider the application within a shorter time, and because one month was an entirely reasonable period in which to consider the application, the charge of undue delay in processing the application is without merit. *Accord Smithson v. United States,* 847 F.2d 791 (Fed.Cir.1988) (83 day interval between time farmers filed their FmHA loan application and the date the agency approved the loan did not constitute "undue delay" by the agency).