# United States Court of Appeals for the Federal Circuit

2008-5003

NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Michael E. Geltner, Geltner & Associates, P.C., of Falls Church, Virginia, argued for plaintiff-appellant.

J. Reid Prouty, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from: United States Court of Federal Claims

Chief Judge Edward J. Damich

# United States Court of Appeals for the Federal Circuit

2008-5003

NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in case no. 1:05-CV-00595, Chief Judge Edward J. Damich.

_____

DECIDED: August 5, 2008

_____

Before MICHEL, Chief Judge, NEWMAN, and LINN, Circuit Judges.

Opinion for the court filed by Chief Judge MICHEL. Circuit Judge NEWMAN concurs in the result.

MICHEL, Chief Judge.

This is a government contract case. It arises because Logicon, Inc., now known as Northrop Grumman Information Technology, Inc. ("Northrop"), acted as a middleman between a software developer and the United States Army. Logicon purchased certain software from the developer and then leased it to the military, effecting the lease by way of a delivery order under a pre-existing contract between Logicon and the United States Air Force.

But before the Air Force issued the delivery order, and apparently before the Army had even received or tested the software, Logicon asked the Army to sign a "Letter of Essential Need," which Logicon drafted, reciting that the software was "essential to the operation of," and "integral to," certain Army computer systems. Apparently based only on a sales presentation, an Army employee signed the letter, and the Air Force issued the delivery order. The Army later determined that the software did not function as expected and was not compatible with its systems and needs, so the Army declined to renew the lease after the first renewal term.

Logicon, by then known as Northrop, filed suit against the United States in the United States Court of Federal Claims, claiming that the United States breached a warranty—allegedly contained in the Letter of Essential Need and incorporated by reference into the contract between the parties—that the software was essential to the Army's computer systems and, according to Logicon's understanding, was not acquired merely on a test or research and development basis. The Court of Federal Claims granted summary judgment to the United States, holding that there could be no breach of warranty because the Letter of Essential Need (1) did not form part of the contract, and, in any event (2) did not warrant what Northrop contends it warranted. Northrop appealed, and we heard oral argument on June 6, 2008. Because the Court of Federal Claims correctly determined that the alleged warranty was not incorporated by reference into the parties' contract, we affirm.

A.    <u>Omnicast Software, the Letter of Essential Need, and the Software Lease</u>

Starburst Software ("Starburst") created Omnicast, a software program designed to minimize the bandwidth required to send data over a network to multiple recipients. In 1999, a Starburst salesman made a marketing call to Joseph Johnson, an employee in the Army's Communication-Electronics Command ("CECOM"), offering to license the Omnicast software to the Army. Johnson thought that Omnicast had the potential to increase efficiency in communications between different CECOM computer systems, and agreed to license the software.  Johnson, however, was not a contracting officer authorized to bind the government, and no contract document was signed by him. Starburst, moreover, did not have an existing contract with the Army, so the parties planned to use a pre-existing contract between the Air Force and Logicon to effect the lease as follows:  Starburst would sell the software to Logicon; Logicon would lease the software to the Air Force; CECOM would receive the software; and CECOM would transfer money to the Air Force to support Air Force lease payments to Logicon.

Before consummating this transaction, and allegedly to satisfy Logicon that the transaction would be worthwhile, a Logicon representative drafted a "Letter of Essential Need" to be signed by CECOM.  The letter read in relevant part (emphasis added):

> This letter is intended to clarify the essential need of the Program Executive Office, Command, Control and Communications (PEO C3S) for the "Starburst Software License Lease Agreement" currently being prepared for implementation. . . . PEO C3S has decided to enter into a lease agreement for the Starburst database products to support [Army Battle Command System] 6.0 and beyond. <u>These products are essential to the operation of ABCS 6.0 as they are integral to the system</u>.  After considering the alternatives, it was determined that a lease was the most cost-effective means of providing long-term, Program-wide access to the Starburst products. . . .

Johnson signed the Letter of Essential Need on behalf of CECOM on or about September 22, 1999. On October 20, 1999, the Air Force issued a delivery order to Logicon, under their pre-existing contract, for the Omnicast software. The delivery order provided for a base period of approximately one month for $100,000, two successive one-year renewal terms for $285,000 each, and a final purchase option for an additional $285,000. The delivery order also recited that "[t]he 'LEASING TERMS AND CONDITIONS' to Special Offer # 330 Revision 03 . . . were incorporated . . . in order to facilitate this [Delivery Order]." Those LEASING TERMS AND CONDITIONS ("Terms and Conditions"), in turn, contained the following opening paragraph (emphasis added).

> These lease terms and conditions are hereby incorporated by reference in their entirety within the [Air Force—Logicon contract]. The [] applicable Delivery Order and these lease terms and conditions constitute the entire agreement between Logicon, Inc. ("Contractor") and the U.S. Government ("Government") relative to the CECOM Starburst lease transaction under the aforementioned contract. It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life-cycle operations for the leased software.

The Terms and Conditions also contained the following clause—in the words of the Court of Federal Claims, the "Escape Clause"—under the heading "Lease."

> [T]he government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months from the date of non-renewal/termination, with an asset performing similar functions which the leased Asset was intended to perform.

CECOM accepted delivery of the Omnicast software in November of 1999, and the Army (through the Air Force) paid for the base period and the first one-year renewal term. Upon testing the software at Fort Hood in Texas, however, the Army discovered

that Omnicast did not work effectively with CECOM's ABCS computer systems in a tactical environment. In March of 2000, Starburst announced that it was being acquired by another software company and that there would be no more updates to the Omnicast software. After discussions with Logicon, CECOM stopped using Omnicast and decided it would not renew the software lease after the first one-year renewal term. The Army uninstalled Omnicast, offered to return it to Logicon, and did not renew the software lease when the first one-year renewal term expired in November of 2001.

B.    Procedural History

In October of 2001, Logicon changed its name to Northrop Grumman Information Technology, Inc. In June of 2002, Northrop Grumman Computing Systems—a different entity and apparently not the successor to Logicon—filed a certified claim to the Contracting Officer, alleging that CECOM's non-renewal of the Omnicast software lease constituted a breach of contract. The Contracting Officer denied the claim in December of 2002, and in January of 2003 Northrop Grumman Computing Systems filed suit in the Court of Federal Claims. In October of 2004, the parties to that suit stipulated to a dismissal without prejudice so that Northrop Grumman Information Technology, Inc.— the true successor to Logicon, referred to herein as "Northrop"—could pursue the contract claim. Northrop filed a new certified claim to the Contracting Officer in March of 2005, and, when that claim was denied, filed this suit on June 3, 2005.

Northrop's Complaint alleged that the United States breached the contract by, inter alia, warranting in the Letter of Essential Need "that the Assets [i.e., the Omnicast software] were essential when, in fact, they were acquired on a test basis and not essential." Northrop sought damages of $570,000, the amount the Army would have

paid had it renewed the software lease for the second one-year renewal term and then exercised the purchase option.

The parties completed discovery in August of 2006. Northrop filed for summary judgment on its breach-of-warranty theory on November 15, 2006, and the United States cross-moved for summary judgment on December 20, 2006. On August 14, 2007, the Court of Federal Claims denied Northrop's motion and granted the United States' motion on two alternative grounds. Northrop Grumman Info. Tech., Inc. v. United States, 78 Fed. Cl. 45 (2007). First, the trial court held that the United States could not be liable on Northrop's theory because "the Contract does not, as a matter of law, incorporate the Letter of Essential Need by reference." Id. at 48. Second, assuming instead that the Letter of Essential Need did form part of the parties' contract, the trial court held that in order to square the Letter with the contract's Escape Clause, "the Letter should be read such that the Government agreed that there was only the potential for the software to work," and thus there was no breach of warranty. Id. at 50 (emphasis added).

Northrop filed a timely notice of appeal on October 9, 2007. The Court of Federal Claims had jurisdiction under the Contract Disputes Act, 41 U.S.C. § 609(a)(1), and we have jurisdiction over that court's final decision under 28 U.S.C. § 1295(a)(3).

DISCUSSION

A.     Standard of Review

We review de novo the Court of Federal Claims' grant of summary judgment and conclusions of law, including the court's interpretation of a contract. St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1380 (Fed. Cir. 2008); N. Star Steel Co.

v. United States, 477 F.3d 1324, 1332 (Fed. Cir. 2007); Am. Capital Corp. v. Fed. Deposit Ins. Corp., 472 F.3d 859, 865 (Fed. Cir. 2006).  Incorporation by reference is a question of law, reviewed de novo.  See Zenon Envtl., Inc. v. U.S. Filter Corp., 506 F.3d 1370, 1378 (Fed. Cir. 2007) ("Whether material has been incorporated by reference into a host document, and the extent to which it has been incorporated, is a question of law."); Advanced Display Sys. v. Kent State Univ., 212 F.3d 1272, 1283 (Fed. Cir. 2000) (explaining in a patent case that "the doctrine of incorporation by reference has its roots in the law of wills and contracts," and that "[i]n those areas of jurisprudence, whether material is incorporated by reference presents a question of law").

B.      Incorporation by Reference

Although in recent years we have discussed incorporation by reference in several opinions in patent cases, see, e.g., Zenon Envtl., 506 F.3d at 1378-81; Cook Biotech, Inc. v. Acell, Inc., 460 F.3d 1365, 1376-78 (Fed. Cir. 2006); Advanced Display Sys., 212 F.3d at 1283-84, we have not often heard a government contract appeal that turns on a question of incorporation by reference, and our case law in this area is somewhat sparse.  What precedent exists, however, comports with our requirement in the patent context that "[t]o incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents [identified]."  Cook Biotech, 460 F.3d at 1376 (quoting Advanced Display Systems, 212 F.3d at 1282).  In other words, the incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable

doubt about the fact that the referenced document is being incorporated into the contract.

For example, we stated recently in St. Christopher Associates that "[t]his court has been reluctant to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation." 511 F.3d at 1384 (emphasis added). We cited Smithson v. United States, 847 F.2d 791 (Fed. Cir. 1988), where the appellants argued that an entire body of regulations promulgated by the Farmers Home Administration was incorporated by reference into the contract-in-suit under the contract's provision that "[t]his agreement is subject to the present regulations of the [Farmers Home Administration] and to its future regulations not inconsistent with the express provisions hereof." 847 F.2d at 794. We rejected the appellants' argument in Smithson, explaining that "[t]his is hardly the type of clause that should be read as incorporating fully into the contract all the FmHA regulations," in no small measure because "if that were the parties' purpose, they would have explicitly so provided." Id. (emphasis added). By contrast, in Southern California Edison Co. v. United States, 226 F.3d 1349 (Fed. Cir. 2000), we explained that the contracts-in-suit did incorporate the terms and conditions of certain regulations by specifically referring to the regulations (the text of which was attached to the contract as an exhibit) "as fully and completely as though set forth herein [i.e., in the contract] in length," id. at 1353.

We have also noted that "[o]ne common way to incorporate extrinsic evidence is through an integration clause that expressly incorporates the extrinsic evidence." Teg-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1339 (Fed. Cir. 2006) (emphasis

added).  Incorporation via integration clause has arisen as an issue in Winstar cases related to the savings and loan crisis of the 1980s, see generally United States v. Winstar Corp., 518 U.S. 839 (1996), and there we have emphasized the need for clarity when referencing extrinsic documents.  For example, in Franklin Federal Savings Bank v. United States, 431 F.3d 1360, 1366 n.4 (Fed. Cir. 2005), a Dividend Agreement between the parties included the following integration clause:  "This Agreement, together with any understanding agreed to in writing by the parties, constitutes the entire agreement between the parties and supersedes all prior agreements and understandings of the parties in connection with the subject matter hereof."  Id. at 1366 n.3.  We held that the reference to "any understanding agreed to in writing by the parties" did not suffice to incorporate by reference an Approval Letter and a Forbearance Letter, because those letters, being unilateral, "were not 'written' agreements signed by the parties, and were not characterized as such in the Dividend Agreement."  Id. at 1366.

By contrast, in Southern California Federal Savings & Loan Assocation v. United States, 422 F.3d 1319 (Fed. Cir. 2005), the integration clause read as follows:

> This Agreement, together with any interpretation or understanding agreed to in writing by the parties, constitutes the entire agreement between the parties and supersedes all prior agreements and understandings of the parties in connection with it, excepting only any resolutions or letters concerning the Conversion, the Acquisition or this Agreement issued by [FHLBB] or [FSLIC] in connection with the approval of the Conversion, the Acquisition and this Agreement.

Id. at 1329 (emphasis added).  We held that "[o]n its face, the [integration] clause specifically incorporates the Forbearance Letter from the FHLBB," and we noted that the government did not contend otherwise.  Id.; see also Franklin, 431 F.3d at 1366 n.4

(explaining that unlike the general language of the integration clause in Franklin, clauses in prior cases including Southern California Federal "invoked different language that explicitly incorporated the Letters" (emphasis added)).

Taken together, these cases support a principle in our Circuit that the language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).

Our insistence on explicit references and clear language of incorporation accords with our sister circuits' understanding of the common law of contracts. See, e.g., Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003) ("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." (emphasis added)); PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) (under common law rule as applied in New York, "the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt" (internal citation omitted)); Hertz Corp. v. Zurich Am. Ins. Co., 496 F. Supp. 2d 668, 675 (E.D. Va. 2007) ("It is axiomatic in the law of contracts that, in order to incorporate a secondary document into a primary document, the identity of the secondary document must be readily ascertainable.").

Moreover, "a majority of states have concluded that the contract must clearly and specifically reference the document to be incorporated." Ingersoll-Rand Co. v. El Dorado Chem. Co., __ S.W.3d __, 2008 Ark. LEXIS 262, at *12-13 (Ark. Apr. 17, 2008) (collecting cases); see also Kokjohn v. Harrington, 531 N.W.2d 99, 101 (Iowa 1995) (per curiam) (recognizing that "[t]he common thread throughout [incorporation-by-reference cases from other state jurisdictions] is a requirement that the reference be clear and specific"). A leading treatise also agrees. 11 Richard A. Lord, Williston on Contracts § 30.25 (4th ed. 1999) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document . . . .").

As other courts have explained, a requirement that contract language be explicit or otherwise clear and precise does not amount to a rule that contracting parties must use a rote phrase or a formalistic template to effect an incorporation by reference. Under Texas law, for example, "[t]he specific language used is not important so long as the contract signed by the defendant plainly refers to another writing." Teal Constr. Co. v. Darren Casey Interests, Inc., 46 S.W.3d 417, 420 (Tex. App. 2001) (emphasis added). Similarly, under Florida law "[a] document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms," but "no particular 'magic words' are required to incorporate a document by reference." Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So. 2d 627, 631 (Fla. Dist. Ct. App. 1999) (internal citations omitted).

Our Circuit likewise does not require "magic words" of reference or of incorporation. However, we stress that parties contracting with the government may easily avoid or at least minimize the risk of having to litigate this issue by simply adopting widely-used and judicially-approved language of incorporation, such as "is hereby incorporated by reference" or "is hereby incorporated as though fully set forth herein," and by including specific and sufficient information identifying a particular document, such as the title, date, parties to, and section headings of any document to be incorporated.

C.    Incorporation of the Letter of Essential Need

Here, Northrop claims that the Army breached a warranty contained in the Letter of Essential Need and incorporated by reference into the contract-in-suit. In agreement with the Court of Federal Claims, we hold that the Letter of Essential Need is not incorporated by reference, and that therefore Northrop's claim must fail.

The starting point for this analysis is the delivery order issued by the Air Force for the Omnicast software. The delivery order states that "[t]he 'LEASING TERMS AND CONDITIONS' to Special Offer # 330 Revision 03 . . . were incorporated . . . in order to facilitate this [Delivery Order]." By thus explicitly referring to the Terms and Conditions and reciting that they "were incorporated," the delivery order successfully incorporates the Terms and Conditions by reference—indeed, both Northrop and the United States agree that the Terms and Conditions form part of the contract-in-suit.

Northrop contends that the Terms and Conditions, in turn, incorporate the Letter of Essential Need by reference as a contract term. Northrop points to the opening paragraph of the Terms and Conditions, which states that "[i]t is hereby mutually

understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life-cycle operations for the leased software" (emphasis added). According to Northrop, the "required information" referenced here is the statement, contained in the Letter of Essential Need, that the leased software was "essential to the operation of ABCS 6.0 as [it is] integral to the system."

However, the Terms and Conditions do not refer to the Letter of Essential Need explicitly, as by title or date, or otherwise in any similarly clear, precise manner. As the Court of Federal Claims explained, the phrase "required information relative to the essential use of the software" could reasonably be interpreted to refer to the Letter of Essential Need or to any number of other prior communications, written and oral, between various representatives of Northrop and the Army. See Northrop Grumman, 78 Fed. Cl. at 48.

Further, even assuming for the sake of argument that this reference is sufficiently explicit, the Terms and Conditions nevertheless do not clearly incorporate the referenced material. Rather, the Terms and Conditions merely recount that "the Government has provided" the required information "as inducement for Contractor entering into this Agreement." As in Smithson, this recital is "hardly the type of clause that should be read as incorporating fully into the contract" some extrinsic text containing additional contract terms. 847 F.2d at 794. "[I]f that were the parties' purpose, they would have explicitly so provided." Id. We can only conclude from the

absence of such explicit language regarding the "required information" that the parties did not intend to incorporate it by reference. See, e.g. Serralles v. United States, 46 Fed. Cl. 773, 785 (Fed. Cl. 2000) ("[T]he incorporating document must not only refer to the incorporated document, it must bring the terms of the incorporated document into itself as if fully set out.").[1] Because the contract-in-suit does not incorporate the Letter of Essential Need, Northrop cannot maintain its claim for breach of warranty under the contract.

Furthermore, the Terms and Conditions, which postdate the Letter of Essential Need, contain an integration clause specifying that "these lease terms and conditions constitute the entire agreement between [the parties] relative to the CECOM Starburst lease transaction under the [Northrop-Air Force] contract" (emphasis added). This integration clause neither incorporates the Letter of Essential Need nor permits its incorporation or the incorporation by reference of any other extrinsic document. Thus, the integration clause prevents Northrop from relying on the Letter. See Betaco, Inc. v. Cessna Aircraft Co., 32 F.3d 1126, 1134 (7th Cir. 1994) ("The essence of the integration inquiry . . . is whether the parties intended their written contract to embody the entirety of their agreement; if so, extrinsic evidence of an additional warranty . . . cannot be admitted. Thus, although the integration clause speaks in terms of agreements rather than warranties, if it is given effect and the signed purchase contract is deemed to be a

---

[1] This conclusion is further bolstered by the context of the disputed contract language. The very first sentence of the Terms and Conditions states that "[t]hese lease terms and conditions are hereby incorporated by reference in their entirety within" the contract. Given that the parties were clearly familiar with such language of incorporation, they likely would have used the same or similar language vis-à-vis the "required information" had they intended to incorporate it into the contract.

fully integrated agreement, it effectively operates so as to preclude the plaintiff from relying on purported warranties beyond the four corners of that agreement.").

Having determined as a matter of law that the Letter of Essential Need does not form part of the contract-in-suit, we may affirm on this ground and need not reach the Court of Federal Claims' interpretation of the language in the Letter.

## CONCLUSION

For the foregoing reasons, the Court of Federal Claims was correct to grant summary judgment to the United States in this breach-of-contract action under the Contract Disputes Act.

## AFFIRMED

NEWMAN, Circuit Judge, concurs in the result.