# United States Court of Appeals for the Federal Circuit

---

**BEACON POINT ASSOCIATES LLC,**
*Appellant*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Appellee*

---

2024-1076

---

Appeal from the Civilian Board of Contract Appeals in No. 7622, Administrative Judge Marian Elizabeth Sullivan, Administrative Judge Harold D. Lester, Jr, Administrative Judge Patricia J. Sheridan.

---

Decided: June 5, 2025

---

TIMOTHY B. HYLAND, Hyland Law PLLC, Reston, VA, argued for appellant.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY; KATHLEEN RAMOS, Office of the General Counsel, United States Department of Veterans Affairs, Arlington, TX.

---

Before HUGHES, MAYER, and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Beacon Point Associates LLC appeals the United States Civilian Board of Contract Appeals' dismissal of its appeal for failure to state a claim upon which relief can be granted. The single question before us is whether the contract between Beacon Point and the Department of Veterans Affairs incorporated by reference Beacon Point's Quote. Because the Board correctly determined that the contract does not incorporate any terms of Beacon Point's Quote, we affirm.

I

The Department of Veterans Affairs issued a request seeking quotes for the lease of a cranial surgical navigation system for the surgical department at the Atlanta Veterans Affairs Medical Center. J.A. 2. On May 29, 2020, Beacon Point submitted a Quote for the request titled "VAATLANTA-STI-101519-01L03." J.A. 168.

The Quote was for one base year with two option years. J.A. 169. The Quote set forth a payment schedule of $159,857.91 for the base year, $272,836.78 for the first option year, and $272,836.28 for the second option year. J.A. 169. Additionally, the Quote contained terms and conditions titled "EXTENDED PAYMENT PLAN TERMS AND CONDITIONS" with form number "BP101819." J.A. 170. Included among the terms and conditions was a provision stating, "[p]rovided it obtains such sufficient funds, the Government *shall* exercise all renewal options." J.A. 170 (emphasis added).

On July 8, 2020, the agency emailed Beacon Point indicating its desire to award Beacon Point the contract and attaching an order. J.A. 173. On July 14, 2020, Beacon Point's representative responded to the agency's order,

stating, "I have attached the quote with the terms and conditions; this needs to be part of the contract." J.A. 172.

On August 3, 2020, the agency emailed Beacon Point again, reiterating its desire to enter the contract and attached an order, a copy of the Quote, and an award letter. J.A. 174–76. The attached order used standard form (SF) 1449 titled "Solicitation/Contract/Order for Commercial Items." J.A. 105. Beacon Point accepted the contract when it signed the order on August 10, 2020. The agency countersigned the contract on September 25, 2020.

The contract specified it was for a base year with two option years. J.A. 118. The contract contained the same payment schedule as the Quote, $159,857.91 for the base year, $272,836.78 for the first option year, and $272,836.28 for the second option year. J.A. 121. Several Federal Acquisition Regulation (FAR) clauses are incorporated into the contract. Specifically, block 27(b) of the contract was selected, which states the "contract[] order incorporates by reference FAR 52.212-4." J.A. 105. Attached to the contract was FAR 52.212-4, titled "Contract Terms and Conditions—Commercial Items," which states "[t]he following clauses are incorporated into 52.212-4 as an addendum to this contract." J.A. 128. Several FAR clauses follow this statement.

Relevant to this appeal, the contract incorporated FAR 52.217-9, titled "Option to Extend the Term of the Contract." J.A. 132. FAR 52.217-9(a) provides that the agency "*may* extend the term of th[e] contract" so long as it provides at least 30 days written notice, but that any preliminary notice "does not commit the Government to an extension." J.A. 132 (emphasis added). The contract, under the plain language of the incorporated FAR 52.217-9, gives the agency complete discretion to exercise the option years.

The contract's only reference to Beacon Point's Quote was in block 29, which states:

> 29. AWARD OF CONTRACT: REF VAATLANTASTI-101510-01L03 OFFER DATED 5-29-2020. YOUR OFFER ON SOLICITATION (BLOCK 5) INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS: [Blank].

J.A. 105.

On June 28, 2021, the agency notified Beacon Point that it would not exercise the first option period. J.A. 149. Beacon Point filed a certified breach of contract claim against the agency seeking $636,855.05 for failure to renew the contract and to use its best efforts to obtain funding for the contract, which Beacon Point alleged was required pursuant to the Quote's terms and conditions. On February 2, 2023, the agency's contracting officer issued a decision denying the claim. Beacon Point filed an appeal with the Board, and the agency subsequently filed a motion to dismiss for failure to state a claim upon which relief can be granted.

On July 28, 2023, the Board granted the agency's motion. The Board determined that the contract did not incorporate the terms of Beacon Point's Quote. The Board held that "[a]s a result, Beacon Point cannot rely on the payment and option extension terms that it set forth in its quote as contractually binding obligations on the VA's part" and dismissed Beacon Point's appeal. J.A. 8. Beacon Point appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## II

"We review the Board's decision on questions of law de novo." *Avue Techs. Corp. v. Sec'y of Health & Hum. Servs.*, 96 F.4th 1340, 1344 (Fed. Cir. 2024) (citing 41 U.S.C. § 7107(b)). Whether extrinsic matter is incorporated by reference into a contract is a question of law we review de

novo. *See CSI Aviation, Inc. v. Dep't of Homeland Sec.*, 31 F.4th 1349, 1355 (Fed. Cir. 2022) ("The issue on appeal is whether the CSI Terms and Conditions are incorporated into the Schedule Contract by reference. This is a question of law we review de novo.").

## III

On appeal, there is no dispute that the plain language of incorporated FAR 52.217-9 provides the agency complete discretion to exercise the option years. The sole issue on appeal is whether the contract incorporated by reference Beacon Point's Quote with its accompanying terms and conditions, which required the agency to exercise the option years if it had sufficient funds, to vary the incorporated FAR clause. We hold it does not.

"Incorporation by reference provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *CSI*, 31 F.4th at 1355 (internal quotation and citation omitted). "To incorporate material by reference, 'the incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract.'" *Id.* (quoting *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008)) (emphasis omitted). Thus, to incorporate extrinsic material by reference, a contract (1) "must explicitly, or at least precisely, identify the written material being incorporated and [(2)] must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." *Northrop*, 535 F.3d at 1345.

Here, there is no dispute that the contract explicitly identifies the "offer" contained within the Quote in block 29. But the parties dispute whether the contract clearly

communicates that the purpose of the reference to the Quote is to incorporate all of the terms of the Quote into the contract. We hold that it does not.

Beacon Point contends that "[t]he purpose for including the Quote in the contract is documented by the contract formation process," which is extrinsic evidence that includes email exchanges between the parties. Appellant's Opening Br. 12. But "[t]o incorporate material by reference, *a contract must use clear and express language of incorporation*, which unambiguously communicates that the purpose is to incorporate the referenced material." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 826 (Fed. Cir. 2010) (emphasis added). As we have explained, "[c]ontract interpretation begins with the language of the written agreement." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citation omitted); *see also TEG-Paradigm Env't, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions.") (citation omitted). Thus, we must consider the language of the contract, rather than extrinsic evidence, to determine whether there was a clear purpose to make the Quote part of the contract.

Both parties rely on our decision in *CSI* to dispute whether there was a clear purpose to make the Quote part of the contract. In *CSI*, the contract also included an SF 1449. 31 F.4th at 1351–52. But an attachment to the SF 1449 stated that "the Offer" was expressly "incorporated and made part of the contract." *Id*. at 1354. Thus, there was no dispute that the contract incorporated the Offer by reference. *Id*. at 1355. Instead, the dispute was whether another document titled "CSI Terms and Conditions," which was identified in the Offer, was also incorporated by reference. *Id*. The incorporated Offer contained a "Pricing Policy [that] include[d] a 'Terms and Conditions' provision" which stated that "CSI Terms and

Conditions . . . will apply to all operations and are included for reference." *Id.* at 1352. We reasoned that the language "will apply to all operations" used in the Offer's Pricing Policy expressly meant that "the referenced CSI Terms and Conditions appl[ied] to at least CSI's pricing terms." *Id.* at 1355 (citing *Apply*, Black's Law Dictionary (11th ed. 2019) (defining "apply" to mean "[t]o employ for a limited purpose" or "[t]o put to use with a particular subject matter")). Thus, we held that the "Offer use[d] sufficiently clear and express language . . . to incorporate the CSI Terms and Conditions into the Schedule Contract by reference." *Id.*

The contract in *CSI* included an attachment that clearly communicated that "the Offer" was expressly "incorporated and made a part of the contract." *Id.* at 1352. Beacon Point's contract does not include a similar attachment. Instead, the only reference to Beacon Point's Quote was in block 29 of the contract, which states "YOUR OFFER ON SOLICITATION (BLOCK 5) INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS: [Blank]." J.A. 105. But a "mere reference to another [document] is not an incorporation of anything therein." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (emphasis, internal quotation, and citation omitted). In contrast to the contract in *CSI*, which stated that the "CSI Terms and Conditions . . . will apply to *all operations*," *CSI*, 31 F.4th at 1352 (emphasis added), block 29 only states that the Quote was "ACCEPTED AS TO ITEMS: [Blank]." J.A. 105. By leaving "blank" which items were accepted, Beacon Point's contract does not clearly communicate that the purpose of the contract's reference to the Quote was to incorporate the Quote into the contract to vary the contract's expressly incorporated FAR clauses.

Lastly, Beacon Point submitted another Quote (First Quote) to the agency titled "VAATLANTA-STI-101519-01L01" on October 18, 2019. J.A. 101. The First Quote is almost identical to the Quote at issue, *compare*

J.A. 101–04, *with* J.A. 168–71, and also included terms and conditions titled "EXTENDED PAYMENT PLAN TERMS AND CONDITIONS" with form number "BP101819." J.A. 103. The First Quote stated:

> "Supplemental Terms & Conditions". These terms must be attached to and *referenced in the Delivery Order* from the Government to Prime. The proper verbiage for the User *to include on their delivery / purchase order* is: "The Terms and Conditions of Form Number BP101819 are hereby incorporated into this delivery order/purchase order, and made a part hereof."

J.A. 102 (emphasis added). Thus, Beacon Point was aware that the agency's *purchase order* must include this "proper verbiage." However, Beacon Point accepted the agency's August 2020 offer without requiring it to reference the Quote's terms and conditions.

The contract's expressly incorporated FAR clauses provided the agency with complete discretion in exercising the option years. If Beacon Point intended to vary the terms of these FAR clauses by incorporating its Quote's terms and conditions into the contract, it should have ensured that the contract expressly identified that the Quote's terms and conditions were incorporated into the contract. Beacon Point did not do so. Instead, Beacon Point accepted a contract that references the Quote but does not clearly communicate that the purpose of the reference was to incorporate the Quote's terms into the contract. Thus, we hold that the contract does not incorporate by reference Beacon Point's Quote.

## IV

We have considered Beacon Point's remaining arguments and find them unpersuasive. Because the Board

correctly determined that the contract does not incorporate any terms of Beacon Point's Quote, we affirm.

**AFFIRMED**

**C**OSTS

No costs.