ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                              )
                                                         )
Planetary Science Institute                              )        ASBCA No. 64123
                                                         )
Under Contract No. 80-MSFC-20-C-0015        )

APPEARANCE FOR THE APPELLANT:              Mark V. Sykes, Esq.
                                                            Counsel


APPEARANCES FOR THE GOVERNMENT:       Karen M. Reilley, Esq.
                                                             NASA Chief Trial Attorney
                                                          Kyle A. Sommerville, Esq.
                                                          Kelly R. Masters, Esq.
                                                             Trial Attorneys
                                                             Marshall Space Flight Center, AL


OPINION BY ADMINISTRATIVE JUDGE WITWER
UNDER BOARD RULE 12.3


        This appeal arises under a contract between appellant, Planetary Science
Institute (PSI), and respondent, the National Aeronautics and Space Administration
(NASA), for work associated with the Heimdall lunar camera project.  PSI seeks to
recover $8,387.81 in costs incurred for the Principal Investigator's travel to a scientific
conference in Scotland.  PSI argues that its proposal was incorporated into the contract
and authorized the foreign travel without any requirement for prior agency approval.
NASA contends that the contract did not incorporate PSI's proposal in full and that the
revised Statement of Work did not authorize the travel.  NASA also argues that PSI
failed to follow required procedures for foreign travel, including obtaining prior
agency approval and a country clearance from the U.S. Department of State.


        PSI elected to proceed under Board Rule 12.3, Accelerated Procedure.
Both parties waived a hearing and submitted their cases on the written record pursuant
to Board Rule 11.  Under Board Rule 12.3(c), the Board's decision "will normally be
short and contain only summary findings of fact and conclusions."  As explained
below, we deny the appeal because PSI has not established that the foreign travel costs
at issue were within the scope of the contract.

*The Contract*

1.  On November 13, 2019, NASA awarded Contract No. 80-MSFC-20-C-0015 to PSI for work on the Heimdall project (JSF ¶ 1; R4, tab 1 at 1-2)—a camera system selected by NASA's Lunar Surface Instrument and Technology Payloads (LSITP) program, which funds payload projects for delivery to the moon via NASA's Commercial Lunar Payload Services (CLPS) initiative (R4, tab 1 at 44, 46; app supp. R4, tab 5 at 107; app. supp. R4, tab 8 at 273, 281).  The Statement of Work was set forth in Attachment J-1 of the contract (R4, tab 1 at 43-45).  The general intent of the Heimdall project is to study the lunar surface (*id.* at 44-45).[2]

2.  The original period of performance was three months (JSF ¶ 2; R4, tab 1 at 44) but was later extended through January 31, 2026 (R4, tab 1.20 at 202).  The contract included Federal Acquisition Regulation (FAR) Clause 52.216-7, ALLOWABLE COST AND PAYMENT (AUG 2018), ALTERNATE IV (AUG 2012), which provides that the contracting officer will make payments in amounts determined to be allowable under FAR subpart 31.7 (R4, tab 1 at 22).

*Modification No. 20*

3.  On August 7, 2023, the parties executed bilateral Modification No. 20 (JSF ¶ 8).  The stated purpose of the modification was to incorporate PSI's February 24, 2023, proposal titled "Heimdall Storage and Integration Proposal" (R4, tab 1.20 at 202, tab 6 at 271).  The proposal supported continued work by the Heimdall Principal Investigator, Dr. R. Aileen Yingst (JSF ¶ 5; R4, tab 6 at 271).

4.  Relevant here, PSI's proposal included, among other tasks, a plan for the Principal Investigator to prepare and publish a paper and present "at an appropriate science conference in 2024 and 2025" (JSF ¶ 6; R4, tab 6 at 273).  The proposal also

---

[1] The parties submitted a 20-paragraph Joint Stipulation of Facts (JSF), as amended on July 11, 2025.  We accept the stipulated facts as true, although we do not restate each one here.  Our findings of fact rely upon the JSF and additional record evidence submitted by the parties.  The Board appreciates the parties' cooperation in preparing the JSF, which was helpful to our review.

[2] The Heimdall is "a flexible camera system intended to model the properties of the Moon's regolith—the soil and other material that make up the top layer of the lunar surface—and characterize and map geologic features, as well [as] characterize potential landing or trafficability hazards, among other goals" (app. supp. R4, tab 8 at 281).  The Heimdall camera system was originally slated to land in early 2027 to explore a lunar region called the Gruithuisen Domes (app. supp. R4, tab 5 at 107).

contemplated multiple other trips for meetings and integration activities at specified locations in the United States (JSF ¶ 7; R4, tab 6 at 273-75, 79-82).

5. The proposal included a cost breakdown for the proposed travel (R4, tab 6 at 279-82) and an amount for the Principal Investigator to travel to a scientific conference in Houston, Texas (*id.* at 282). The proposal cautioned, however, that travel was "estimated" and subject to change (JSF ¶ 7; R4, tab 6 at 275). Specifically, it stated that, "[d]ue to current uncertainties in the project[,] the actual number of trips, locations, dates, durations and participants may vary from proposal, based on needs to accomplish the [Statement of Work]" (JSF ¶ 7; R4, tab 6 at 275). The proposal did not explicitly propose or budget for any foreign travel.

6. While Modification No. 20 stated it incorporated PSI's proposal, the parties dispute what that means. PSI argues the entire proposal was incorporated into the contract (app. br. at 8-9; app reply at 3-5), while NASA maintains only specific, identified portions were included (gov't br. at 18, 20-24). Given this disagreement, we describe, in detail, the relevant provisions of the modification.

7. Modification No. 20 begins by stating that "[t]he purpose . . . is to incorporate the proposal entitled, 'Heimdall—Storage and Integration' submitted February 24, 2023" (R4, tab 1.20 at 202). It then identifies the resulting changes, including updated funding, an extension of the period of performance, and revised contract documents (*id.*).

8. Most notably, the modification states that, "[t]o implement the changes associated with this modification, the following . . . attachment(s) have been modified," and expressly identifies a revised Statement of Work (Attachment J-1), Data Procurement Document (Attachment J-2), and Government Furnished Property list (Attachment J-3) in the list of modified contract documents (*id.* at 202, 209). PSI's February 24, 2024, proposal is not included among the attachments, nor is it physically included in the modification (JSF ¶ 9).

9. To further clarify matters, the modification states that, "[a]s a result of this action," a revised Statement of Work is incorporated "in its entirety" at Attachment J-1 (R4, tab 1.20 at 202). The modification also states that "Attachment[] J-1 . . . [has] been updated to reflect the incorporation of the updated [Statement of Work]" and instructs that "[t]he Contractor shall provide deliverables as identified within the statement of work . . . as provided under Attachment[] J-1" (*id.* at 202, 204). The modification also identifies the specific pages "added/deleted" in the Statement of Work as a result of the modification (*id.* at 202). Finally, the modification concludes with the standard language that "[a]ll other terms and conditions remain unchanged and in full force and effect" (*id.* at 203).

3

10.  To understand PSI's obligations under Modification No. 20, we turn to the revised Statement of Work contained in Attachment J-1.  This document lists four project objectives (*id.* at 212).  The only potentially relevant one requires PSI to "support meetings, discussions and analysis related to necessary pre-delivery science" (*id.*; *see also* JSF ¶¶ 11-12).  Upon closer review, however, this objective does not require PSI to present at a scientific a conference.  Rather, it requires PSI to support: (a) meetings to discuss the quarterly progress reports and (b) science team meetings to support pre-delivery science analysis (R4, tab 1.20 at 212).  There is no language requiring or authorizing the travel at issue here.  Likewise, the revised Statement of Work also contains a list of deliverables, including technology reports, monthly and quarterly progress reports, financial management reports, and incident reports (*id.* at 213).  It does not mention the preparation and publication of a paper as a contract deliverable.[3]

11.  Finally, neither party identified, nor have we found, any provision in the base contract or Modification No. 20 requiring PSI to obtain prior approval for foreign travel or to secure a country clearance from the Department of State.  Rather, these requirements were emailed to PSI in July 2022 (R4, tab 12 at 340-41).  When NASA communicated these requirements to PSI, the email framed them as agency-wide procedural changes rather than contract-specific obligations, giving the impression that they reflected a general shift in NASA policy rather than terms to be incorporated into PSI's contract (*id.*).  The record shows that PSI was confused by NASA's email and that it sought clarification (*id.* at 339-40).  NASA did not respond to PSI's request for clarification (*id.* at 339).

*Travel Associated with the Symposium in Scotland*

12.  In June 2024, the Principal Investigator, Dr. Yingst, attended and presented at the European Lunar Symposium in Dumfries, Scotland (app. supp. R4, tab 4 at 38; amend. JSF ¶ 14).  The conference was co-chaired and organized, in part, by NASA personnel (app. supp. R4, tab 4 at 32; *see also* gov't br. at 16).  Of the approximately 100 papers presented, nine had NASA lead authors (app. supp. R4, tab 5 at 46, 48, 57, 59, 74, 103, 159, 172, 184).  The agenda also featured a presentation by NASA's CPLS Project Office—responsible for transporting Heimdall—summarizing contracted deliveries of NASA payloads to the moon, including Heimdall and another lunar package, the Lunar-VISE (*id.* at 48-49).

---

[3] We note that Modification No. 20 follows the same drafting pattern as numerous prior modifications to this contract (R4, tabs 1.1-1.19, Modification Nos. 1-19). The opening sentence recites that the modification incorporates PSI's proposal or an agreement between the parties, but the operative language then turns to identify the precise changes being made, such as amended clauses, revised attachments, and updated lists (*see e.g.*, R4, tab 1.4 at 85-87, 90).

13.  At the symposium, the Heimdall Principal Investigator presented a talk titled "Preliminary Mapping Efforts Prior to the Commercial Lunar Payload Services (CPLS) Launch of the Heimdall Camera System," while the Lunar-VISE team gave two oral presentations on their project (*id.* at 64-65, 90-91, 107-08; app. supp. R4, tab 4 at 38).[4]

14.  PSI submitted an invoice in June 2024 seeking reimbursement for the foreign travel costs associated with the Principal Investigator's participation at the symposium (JSF ¶ 14; R4, tabs 10-11 at 322), along with a related fee-based invoice (JSF ¶ 14; R4, tab 8).  NASA rejected both, asserting that the contract did not authorize the travel to present at the conference and that PSI had failed to follow required foreign travel approval procedures (JSF ¶¶ 15-17; R4, tab 11 at 320-22, tab 12 at 326-27, 329-30, 332).

*The Claim*

15.  In December 2024, PSI submitted a claim for $8,387.81, the total amount associated with the rejected invoices (JSF ¶ 18; R4, tab 12 at 325-26).[5]  In January 2025, the contracting officer denied the claim, finding that PSI's proposed conference presentation was not incorporated into the contract's Statement of Work (JSF ¶ 19; R4, tab 13 at 349-50).  PSI appealed to the Board in April 2025 (JSF ¶ 20), electing to proceed under Rule 12.3, Accelerated Procedure.

DECISION

I.    Contentions of the Parties

PSI argues that its proposal should be reasonably interpreted to permit travel—foreign or domestic—to appropriate scientific conferences (app. br. at 6-7).  PSI maintains that the contract did not require prior approval for such travel and left the selection of an appropriate conference to PSI's discretion, without imposing any geographic limitations (*id.* at 7, 11; app. reply at 5).  PSI further contends that its entire proposal was incorporated into the contract through Modification No. 20 (app. br. at 7) and that any ambiguity in the contract is latent and should be construed against NASA,

---

[4] PSI devotes several paragraphs of its proposed findings of facts (app. PFF ¶¶ 6-21) to explaining why the European Lunar Symposium qualifies as "an appropriate science conference," as that phrase was used in PSI's proposal (app. PFF ¶¶ 6-21; *see also* app. br. at 9-11; app. reply at 6-7).  We find PSI's explanation credible and persuasive.  Because NASA does not challenge PSI's claim on this account, we see no reason to repeat PSI's arguments here.

[5] PSI's claim includes $6,262.19 in direct travel costs, $1,878.66 in indirect costs, and a $246.96 fee (JSF ¶ 18).

as the drafter, under the doctrine of *contra proferentem* (*id.*).  PSI concludes that NASA's refusal to pay the invoices constitutes a breach of contract (*id.* at 6).

NASA responds that PSI's foreign travel costs are unallowable because Modification No. 20 did not incorporate PSI's proposal in its entirety—only specific attachments were included—and the revised Statement of Work contains no reference to conference attendance or foreign travel (gov't br. at 18-19).  Therefore, NASA argues that the costs fall outside the scope of the contract (*id.* at 17).  Alternatively, even if the proposal were fully incorporated, NASA asserts that it contemplated only domestic travel to a scientific conference (*id.* at 17-18).  Finally, NASA also argues that PSI failed to follow required procedures for foreign travel, including obtaining prior agency approval and a country clearance from the U.S. Department of State (*id.* at 30-31).[6]

## II.     Applicable Legal Precedent

The elements of a breach of contract claim are:  (1) a valid contract between the parties; (2) an obligation or duty on the part of the government arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.  *D2 Gov't Sols.*, ASBCA No. 63030, 24-1 BCA ¶ 38,688 at 188,095 (citing *Lockheed Martin Integrated Sys., Inc.*, ASBCA Nos. 59508, 59509, 17-1 BCA ¶36,597 at 178,284).  The appellant bears the burden of proving each element.  *Id.* (citing *Action Support Serv. Corp.*, ASBCA No. 46800, 00-1 BCA ¶30,701 at 151,682).  As explained below, PSI has not met that burden because it has not established that NASA was contractually obligated to reimburse the foreign travel costs at issue—costs that fell outside the scope of the contract.

## III.    Conference presentation was outside the scope of the contract, and NASA's refusal to reimburse related travel costs does not constitute a breach.

The parties devoted considerable attention to the question of whether PSI's proposal—if incorporated into the contract—authorized foreign travel.  The Board agrees with PSI that the proposal, by its terms, would have permitted PSI to exercise some discretion in selecting "an appropriate science conference," and that PSI has established the symposium in question met that standard (finding 13 n.4).  The contract also does not impose any explicit requirement that PSI seek prior approval or follow specific procedures for foreign travel (finding 11).  What is fatal to PSI's claim, however, is that its proposal was not incorporated in its entirety into the contract.  Rather, the plain language of Modification No. 20 incorporated only specific, enumerated attachments—not the full proposal.  Accordingly, any discretionary

---

[6] NASA concedes that these requirements were not expressly included in the contract but should nevertheless be read into the contract under the *Christian* doctrine (gov't br. at 31 n.23).

6

language in the proposal related to foreign travel is not binding and cannot serve as a basis for reimbursement.

Whether extrinsic evidence is incorporated by reference into a contract is a question of law. *Beacon Point Assoc. LLC v. Dep't of Veterans Aff.*, 139 F.4th 1306, 1308 (Fed. Cir. 2025) (citing *CSI Aviation, Inc. v. Dep't of Homeland Sec.*, 31 F.4th 1349, 1355 (Fed. Cir. 2022)). To incorporate extrinsic material by reference, "a contract (1) must explicitly, or at least precisely, identify the written material being incorporated and (2) must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." *Id.* at 1309 (internal quotations omitted). Here, Modification No. 20 explicitly identifies PSI's proposal. It does not, however, clearly communicate that the purpose of the reference is to incorporate the proposal in its entirety into the contract.

As with all matters of contract interpretation, we begin with the plain language of the modification. *Clean by Lucy, Inc*., ASBCA No. 58432 *et al.*, 16-1 BCA ¶ 36,287 at 176,969 (citing *Bell BCI Co.*, 570 F.3d 1337, 1341 (Fed. Cir. 2009)); *Am. Int'l Contractors, Inc.*, ASBCA Nos. 60948, 61166, 18-1 BCA ¶ 37,061 at 180,411 (citing *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006)). Where the language is clear and unambiguous, it must be given its plain and ordinary meaning. *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993). We may not consider extrinsic evidence to create an ambiguity where none exists. *Am. Int'l Contractors Inc.*, 18-1 BCA ¶ 37,061 at 180,411 (citing *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994)); *Korte-Fusco JV*, ASBCA No. 59767, 15-1 BCA ¶ 36,158 at 176,455 (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)).

Applying this standard, we find that the language of Modification No. 20 is unambiguous and must be interpreted according to its plain terms. Although the modification initially states that it is intended to "incorporate the proposal entitled, 'Heimdall—Storage and Integration' submitted February 24, 2023," it immediately clarifies the specific contractual changes resulting from that incorporation (findings 7-9). The modification expressly identifies the revised Statement of Work (Attachment J-1), Data Procurement Document (Attachment J-2), and Government Furnished Property list (Attachment J-3) as the documents being added to or modified in the contract (finding 8). PSI's proposal is not listed among the attachments, nor is it physically included in the modification (*id*). Moreover, the modification states that PSI "shall provide deliverables as identified within the Statement of Work" (finding 9), further reinforcing that Attachment J-1—not the proposal—defines PSI's contractual obligations. Simply put, nothing in the modification provides that NASA would reimburse PSI for travel to Scotland. Because the language of the modification is clear, we may not consider extrinsic evidence to expand the scope of work. *Am.*

7

*Int'l Contractors*, 18-1 BCA ¶ 37,061 at 180,411; *Korte-Fusco JV*, 15-1 BCA ¶ 36,158 at 176,455.[7]

Since we find that PSI's proposal was not incorporated into the contract and that the revised Statement of Work does not obligate PSI to prepare or publish a paper or to present at a scientific conference (finding 10), NASA had no contractual duty to reimburse the foreign travel costs at issue. This conclusion disposes of PSI's claim. Accordingly, we need not reach NASA's alternative arguments, including whether PSI failed to comply with foreign travel approval procedures.

As a final observation, this dispute stems from missed opportunities for communication. Two stand out. First, PSI and NASA both participated in the same symposium, yet it is unclear whether PSI ever informed NASA that it would be presenting or whether NASA ever questioned PSI's role at the event. Second, when NASA circulated an email purporting to set foreign travel requirements, it did not respond to PSI's request for clarification, leaving uncertainty as to how those requirements applied to this contract. Against this backdrop, PSI believed that having Dr. Yingst present the Heimdall team's work at an international lunar science symposium was a logical and valuable step, providing immediate peer feedback on the quality of the research. NASA, for its part, appears to have been motivated by a desire to comply with its understanding of foreign travel rules, even if those requirements were not incorporated into this contract. Had the parties communicated more clearly, this modest $8,387.81 dispute might well have been avoided. PSI asserts that foreign travel may arise again. Both sides should ensure they are aligned in advance.

---

[7] PSI contends that NASA treated its proposal as if it had been incorporated wholesale into Modification No. 20, pointing to an email exchange in which PSI justified a labor charge for work performed by a Project Administrator by noting that the position was described in its proposal (app. reply at 4-5). NASA's contracting officer replied only, "Appreciate the explanation" (JSF ¶ 13). NASA does not address this argument, the invoice itself does not appear to be in the record, and PSI does not further develop the point. In any event, nothing in the email exchange reflects NASA's view of the allocability of the cost, nor do we know what work the Project Administrator performed. To the extent the administrator supported deliverables plainly described in the revised Statement of Work—such as preparing reports or supporting meetings—we see no obvious inconsistency with the contract or NASA's position. Moreover, while the revised Statement of Work prescribes tasks to be performed, it does not prescribe labor categories at all, leaving it to PSI to staff the required tasks as it sees fit. Thus, PSI's argument provides no basis for treating its proposal as incorporated into the contract.

<u>CONCLUSION</u>

The appeal is denied.  PSI has not demonstrated that the costs it seeks are within the scope of the contract or that NASA breached any contractual obligation.

Dated:  August 26, 2025

ELIZABETH WITWER
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 64123, Appeal of Planetary Science Institute, rendered in conformance with the Board's Charter.

Dated:  August 26, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals